IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| PATRICIA LAVADOUR,<br><br>　　　　　　　　Plaintiff,<br>v.<br><br>CAROLYN W. COLVIN, in her capacity as Acting Commissioner of the Social Security Administration,<br>　　　　　　　　Defendant. | MEMORANDUM DECISION AND ORDER REVERSING AND REMANDING DECISION OF COMMISSIONER<br><br>Case No. 2:11-cv-1163<br><br>Magistrate Judge Brooke Wells |

Plaintiff, Patricia Lavadour ("Plaintiff") seeks judicial review of the determination of the Commissioner of the Social Security Administration which denied her application for Social Security disability insurance benefits.  After careful consideration of the written briefs and the administrative record, the Court has determined that oral argument is unnecessary and issues the following Memorandum Decision and Order Reversing and Remanding the decision of the Commissioner.

## BACKGROUND

Plaintiff, Ms. Lavadour, who was born on August 16, 1955[1], filed for Disability Insurance Benefits and Supplemental Security Income in January, 2008, alleging disability beginning January 1, 2008.[2]  Plaintiff contends she is disabled due to a combination of impairments, including severe depression, arthritis, fatigue, shoulder immobility, poor vision, and extreme pain.[3]

---

[1] Administrative Record [hereinafter referred to as "Tr."] at 81.
[2] Tr. at 17; Opening Brief, docket no. 17 at 2 [hereinafter referred to as "Opening Br."].
[3] Opening Br. at 2.

Plaintiff's claim was initially denied on August 11, 2008, and upon reconsideration on February 24, 2009.[4]  Plaintiff then requested an administrative hearing.   A hearing before an Administrative Law Judge ("ALJ") was held on November 20, 2009.[5] On March 16, 2010, the ALJ issued a written decision denying Plaintiff's claim for benefits.[6]  Plaintiff then appealed the denial to the Social Security Appeals Council which denied a review of the ALJ's decision on October 20, 2011.[7]  Pursuant to 42 U.S.C. § 405(g), this appeal followed.

In the ALJ's decision, the ALJ found at Step One of the required sequential evaluation process[8] that Plaintiff had not engaged in substantial gainful activity for a continuous 12-month period.[9]  At Step Two, the ALJ found that the Plaintiff's severe impairments were "(1) degenerative joint disease of the right shoulder and an affective/mood disorder (depression).[10]  At Step Three, the ALJ found that the Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments contained within the regulations.[11]

Next, the ALJ found that the Plaintiff had a residual functional capacity ("RFC") to perform the full range of light/semi-skilled work, except such work could not require:

> lifting more than 10 pounds at a time; lifting or carrying lighter articles weighing more than 3 to 5 pounds, on an occasional basis, which means from very little up to 1/3 of the day; bending, stooping, twisting or squatting on more than a "less than occasional" basis; work on the floor (essentially no kneeling, crawling, or crouching); stair climbing (a few

---

[4] Tr. at 17.
[5] Id.
[6] Tr. 17-35.
[7] Tr. at 1-3, 5.
[8] See Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005)(explaining the five-step sequential evaluation for determining if a claimant is disabled).
[9] Tr. at 20. The ALJ made this finding despite the fact that Plaintiff was employed part-time as a cashier at Kohl's Department Store.  Tr. at 22.
[10] Id.
[11] Id.

steps not precluded) but no flights of stairs; overhead lifting and reaching on more than a less than occasional basis; and more than frequent reaching, frequent handling and frequent fingering.  In addition, she does not have binocular vision, as she only has vision in the right eye. Therefore, she does not have the capacity to perform tasks requiring bilateral fine vision.[12]

As to the medical opinions rendered in making the RFC determination, the ALJ stated that the record demonstrated that the Plaintiff received a majority of her medical care for right shoulder pain, arthritis, and hypertension through Community Health Centers.[13]  In addition, the ALJ provided a lengthy review of various providers that treated the Plaintiff.[14]  Specifically, the ALJ's opinion contained the following:

### 1.  David G. Ericksen, Ph.D.

Dr. Ericksen performed a psychological examination of the Plaintiff in September, 2007.[15]  To Dr. Ericksen, "[Plaintiff] appeared to be emotionally unstable with significant depression, many somatic complaints, anger, suspiciousness, and likely some personality pathology.[16]  In addition to a clinical interview, Dr. Ericksen performed a series of tests on Plaintiff, including:  Wechsler Adult Intelligence Scale-III (WAIS-II); Minnesota Multiphasic Personality Inventory (MMPI-II); Beck Depression Inventory-II (BDI-II); and Beck Anxiety Inventory-II (BAI).[17]  Dr. Ericksen indicated that Plaintiff's test results suggested that she would be best suited to jobs involving simple, repetitive tasks, rather than acute judgment and insight.[18]  However, Dr. Ericksen opined that in Plaintiff's current condition, Plaintiff would be a poor prospect for job training and

---

[12] Tr. at 21.
[13] Tr. at 24.  Although the ALJ made this finding, other than the discussion of Susie Sittler, FNP, the ALJ did not discuss what weight, if any, that was attributed to the providers at the Community Health Center(s).
[14] Tr. at 24-31.
[15] Tr. at  24.
[16] Id.
[17] Tr. at 24, 375.
[18] Tr. at 24, 377.

recommended that Plaintiff receive a thorough psychiatric medication evaluation and have access to psychotherapy.[19]  Dr. Ericksen also noted that Plaintiff would likely be a difficult therapy client because of her tendency to complain and externalize rather than look at herself and seek substantive solutions to her problems.[20] Lastly, Dr. Ericksen diagnosed Plaintiff with the following:

> Axis I: Major Depressive Disorder, Recurrent, Severe, Without Psychotic Features; Cognitive Disorder NOS; R/O Somatoform Disorder NOS.
>
> Axis II: R/O Personality Disorder NOS (borderline, antisocial, and histrionic feature); Borderline intellectual functioning.
>
> Axis III Per medical records;
>
> Axis IV: Problems with primary support group; occupational problems;
>
> Axis V: GAF=50.[21]

After discussion of Dr. Ericksen's evaluation and diagnosis of Plaintiff, the ALJ's discussion of Dr. Ericksen ends.  Thus, no weight was assigned to this opinion and no reasons were provided either accepting or rejecting this opinion.

### 2.  Jessica Wolfinger, LCSW

Included in the record and discussed by the ALJ are four letters written by Jessica Wolfinger, LCSW regarding Plaintiff[22].  Through these letters, Ms. Wolfinger discussed her visits with Plaintiff for psychotherapy as well as her diagnosis and opinion as to Plaintiff's ability to work.[23]  Ms. Wolfinger diagnosed Plaintiff with Major Depressive Disorder, Postraumatic Stress Disorder and Generalized Anxiety Disorder.[24]  Ms.

---

[19] Id.
[20] Tr. at 377.
[21] Tr. at 378.
[22] Tr. at 24, 25, 28, 30, 410, 463, 464, 498.
[23] Id.
[24] Id.

Wolfinger gave Plaintiff GAF scores ranging from 41-58 and opined that Plaintiff was

unable to work because of "concomitant medical and mental health issues."[25]

The ALJ found Ms. Wolfinger not to be an acceptable medical treating source

because she is a licensed clinical social worker.[26]  Despite this finding, the ALJ stated

that he had fully considered Ms. Wolfinger's findings and opinion as if she functioned as

a treating source but the final responsibility for deciding issues of disability was reserved

to the Commissioner.  Therefore, the ALJ did not place weight on Ms. Wolfinger's

statement(s) regarding disabling impairment.[27]

### 3.  Jonathan J. Ririe, Ph.D.

After being contacted by the Division of Disability Determination Services for

Social Security to perform a psychological exam, Plaintiff was seen by Dr. Ririe on June

27, 2008.[28]  After visiting with the Plaintiff regarding her complaints, Dr. Ririe opined

that Plaintiff did not appear to be suffering from a psychotic disorder and noted that

Plaintiff "tended to be rather quick to assign blame onto others particularly for their

failure to be more attentive to her."[29]  Dr. Ririe further opined that Plaintiff did identify

some symptoms of depression but did not appear to be suffering from a major depressive

disorder.  To Dr. Ririe, Plaintiff appeared to have some situationally based anxiety related

to her physical problems.  Dr. Ririe diagnosed Plaintiff with depressive disorder not

otherwise specified ("NOS"), Mood Disorder due to physical pain with depressive

---

[25] Id., Tr. at 410.
[26] Tr. at 25.
[27] Id.
[28] Tr. at 25, 417.
[29] Tr. at 421.

features and personality disorder NOS, with histrionic features.[30]  Dr. Ririe also gave

Plaintiff a GAF Score of 65.[31]

Dr. Ririe opined that Plaintiff may benefit from counseling in order to learn to

adopt more effective problem solving skills and strategies to handle some of her

difficulties.[32]  As to this opinion, the ALJ gave Dr. Ririe's assessment the following

weight:  "the undersigned finds Dr. Ririe to be an acceptable medical examining source.

Based on the doctor's thoroughness in evaluating and testing the claimant based on

objective medical standards, more weight is applied to the doctor's medical opinion."[33]

### 4.  Justin Johnsen, M.D.

On July 19, 2008, Plaintiff was seen by Dr. Justin Johnsen for a consultative

evaluation.[34]  After examination, Dr. Johnsen opined that "patient would be mildly

limited in her ability to lift heavy objects and work overhead, secondary to her right

shoulder."[35]  Dr. Johnson further found the following "Impressions":  (1) Patient reports a

history of arthritis and on examination she has tenderness, stiffness and crepitus with

movement of her right shoulder; (2) Plaintiff has decreased vision in her left eye and a

ophthalmology examination recommended; (3) no evidence of heart condition was

found.[36]  Dr. Johnson also noted that the Plaintiff was able to lift, carry and handle light

objects and squat and rise from position with ease and her range of motion was within

normal limits.[37]

---

[30] Id.
[31] Id.
[32] Id.
[33] Tr. at 26.
[34] Id., 424.
[35] Tr. 428.
[36] Id.
[37] Tr. at 427.

The ALJ found Dr. Johnson to be an acceptable medical examining source.[38] In placing "weight" on the doctor's medical findings and conclusion, the ALJ reasoned that the doctor provided a very comprehensive report of his evaluation findings.[39]

### 5. Susie Sittler, FNP

On October 21, 2009, a disability/functional capacity questionnaire was completed for Plaintiff by Susie Sittler, FNP at the Community Health Center.[40]   In addition to documenting and assessing the Plaintiff's complaints, Ms. Sittler opined as to the Plaintiff's functional capacity that Plaintiff could

> lift 5 pounds frequently and 5 to 10 pounds occasionally.  She could sit in 15 to 30-minute increments and stand in 4-hour increments for a total of 6 hours in an 8-hour workday.  She could occasionally reach over shoulder level with both arms and perform both gross and fine manipulations bilaterally.  She can frequently stoop and bend.[41]

The ALJ found Ms. Sittler to be a non-acceptable medical treating source and after review of the record, found that many of the Plaintiff's symptoms documented by Ms. Sittler were subjective complaints and not in line with the objective medical record.[42] The ALJ did not provide what weight, if any, that was assigned to Ms. Sittler's opinions.

### 6. State Agency Physicians

The ALJ also mentioned the findings and conclusions of the two state agency physicians, Drs. Rox Burkett and Michael DeBerard who evaluated the Plaintiff's conditions.[43]   According the ALJ,

> [t]he State agency physicians opined the claimant could occasionally lift 20 pounds frequently, life 10 pounds, stand and/or walk about 6 hours in

---

[38] Tr. at 27.
[39] Id.
[40] Tr. 28, 502-505.
[41] Tr. at 28.
[42] Tr. at 29.
[43] Tr. 32-33, 435-460.

an 8-hour workday and sit about 6 hours in an 8-hour workday.  Also, she could perform <u>unlimited</u> pushing and pulling.  She had no postural limitations but was limited in reaching in all direction (including overhead).  She had limitations in near and far acuity, depth perception, accommodation and field of vision.  She had mild mental limitations in performing daily activities: social functioning; and maintaining concentration, persistence and pace, with no episodes of decompensation.[44]

The ALJ found that because the state agency physicians were not treating physicians, their opinions were not entitled to controlling weight.[45]  The ALJ then stated "h]owever, the State agency physicians have reviewed the medical record and are experienced and knowledgeable regarding SSA disability requirements."[46]  Other than this discussion, the ALJ did not discuss any other weight or reasons for rejection of acceptance of state agency physicians' opinions.

At Step Four, the ALJ found the Plaintiff was capable of performing past relevant work as a cashier/checker.[47]  In addition, the ALJ found that although the Plaintiff was capable of performing her past relevant work, there are other jobs in existing in the national economy in which Plaintiff is able to perform.[48]  Thus, in the alternative, at Step Five after considering the testimony of a vocational expert and the Plaintiff's age, education, work experience and RFC, the ALJ determined Plaintiff could perform other work existing in significant numbers in the national economy.[49]  Therefore, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act.[50]

---

[44] Tr. at 32.
[45] Tr. at 32.
[46] Tr. at 32-33.
[47] Tr. at 33.
[48] <u>Id</u>.
[49] Tr. 33-34.
[50] Tr. at 35.

## STANDARD OF REVIEW

This Court's review of the ALJ's decision is limited to determining whether his findings are supported by "substantial evidence" and whether the correct legal standards were applied.[51]  If supported by substantial evidence, the findings are conclusive and must be affirmed.[52]  "Substantial evidence" means "such evidence as a reasonable mind might accept as adequate to support a conclusion."[53]  Thus, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence."[54]

Additionally, the ALJ is required to consider all of the evidence; however, the ALJ is not required to discuss all evidence.[55]  In its review, the Court should evaluate the record as a whole, including that evidence before the ALJ that detracts from the weight of the ALJ's decision.[56]  However, a reviewing Court should not re-weigh the evidence or substitute its own judgment for that of the ALJ's.[57]  Further, the Court "may not 'displace the agenc[y's] choice between two fairly conflicting views, even though the Court would justifiably have made a different choice had the matter been before it de novo.'"[58] Lastly, "[t]he failure to apply the correct legal standard[s] or to provide this Court with a sufficient basis to determine that appropriate legal principles have been followed [are] grounds for reversal."[59]

---

[51] Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); Ruthledge v. Apfel, 230 F.3d 1172, 1174 (10th Cir. 2000); Glenn v. Shalala, 21 F.3d 983 (10th Cr. 1993).
[52] Richardson v. Perales, 402 U.S. 389, 401 (1981).
[53] Clifton v. Charter, 79 F.3d 1007, 1009 (10th Cir. 1996).
[54] Zoltanski v. FAA, 372 F.3d 1195, 1200 (10th Cir. 2000).
[55] Id.
[56] Shepherd v. Apfel, 184 F.3d 1196, 1199 (10 Cir, 1999).
[57] Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000).
[58] Lax, 489 F.3d at 1084 (quoting Zoltanski, 372 F.3d at 1200).
[59] Jensen v. Barnhart, 436 F.3d 1163, 1165 (10th Cir. 2005)(internal citations omitted).

In applying these standards, the Court has considered the Administrative Record,[60] as well as the parties' briefs and arguments.  The Court finds the following:

## DISCUSSION

In her appeal, Plaintiff raises four arguments: (1) Did the ALJ err in denying Ms. Lavadour's case based on a vocational expert's response to an incomplete hypothetical?; (2) Did the ALJ err in improperly rejecting the opinions of the claimant's treating and examining medical providers? (3) Did the ALJ err in rejecting the claimant's own subjective complaints as well as the lay witness statements of her friend Rose Chapman? (4) Did the ALJ err in failing to conduct a proper step four analysis?[61]

After considering these issues and upon consideration of the record, the Court finds issue two (2) to be dispositive and for the reasons set for the below, warrants remand.  Therefore, because Plaintiff's other arguments may be affected by the determination on remand, the Court will not address them and will therefore limits its discussion to the whether the ALJ properly addressed the opinions of the Plaintiff's treating and examining medical providers.

### A.  ALJ's Opinion as to Plaintiff's Treating and Examining Medical Providers

In support of her claim that the Commissioner's decision should be reversed, Plaintiff argues that the ALJ erred by improperly rejecting the opinions of her treating and examining medical providers.   Specifically, the Plaintiff argues that the ALJ improperly failed to state the weight assigned to Dr. Ericksen's opinion or reasons for rejecting it.  On the other hand, the Defendant argues that the Plaintiff has failed to point to a medical opinion offered by Dr. Ericksen and therefore the ALJ was not required to assign any

---

[60] Docket no. 9.
[61] Opening Br. at 8.

weight or provide a reason for rejecting Dr. Ericksen's evaluation.   In addition, the Defendant argues that the Plaintiff has failed to demonstrate how she was harmed by the ALJ's handling of Dr. Ericksen's evaluation.  Plaintiff counters the latter argument by asserting that had Dr. Ericksen's opinion been weighted properly, Plaintiff could have been found to be disabled.

Next, Plaintiff argues that the ALJ erred by not giving greater weight to Ms. Wolfinger's opinions because she treated Plaintiff on several occasions and was more familiar with the Plaintiff's mental state than any other examining doctor.  Conversely, Defendant argues that because Ms. Wolfinger is not an "acceptable medical source" as governed by the regulations, her opinions could not be given controlling weight.

Lastly, the Plaintiff argues that the ALJ failed to adequately explain his reasons for rejecting Nurse Sittler's opinion.   The Defendant argues that the ALJ's decision was proper as to Nurse Sittler because she was not an acceptable medical source and it was proper the ALJ to reject her opinions because they were based upon the Plaintiff's subjective complaints and not supported by the objective medical evidence.

Initially, the Court notes that the ALJ did not assign "controlling weight" to any of the medical opinions that were discussed within his opinion.  Instead, the ALJ provided no analysis as to Dr. Ericksen's opinion.  Specifically, the ALJ did not state what weight, if any, he gave to Dr. Ericksen's opinion or any reasons for accepting or rejecting it.[62]  The ALJ gave no weight to Jessica Wolfinger's opinion as to a disabling impairment.[63] He gave Dr. Ririe "more weight" based on the doctor's thoroughness in

---

[62] Tr. at 24.
[63] Tr. at 25.

evaluating and testing the claimant based on objective medical standards.[64]  Next,

"weight" was given by the ALJ to Dr. Johnsen's opinions because the doctor provided a

very comprehensive report of his evaluation findings.[65]  Lastly, the ALJ gave no weight

to Susan Sittler.[66]

     Under the regulations, "medical opinions are statements from physicians and

psychologists or other acceptable medical sources that reflect judgments about the nature

and severity of [a claimant's] impairments, including…symptoms, diagnosis, and

prognosis, what [a claimant] can still do despite impairment(s), and [a claimant's]

physical or mental restrictions."[67]  Acceptable "treating source medical opinions are []

entitled to deference," and must either be given controlling weight or assigned some

lesser weight "using all of the factors in 20 C.F.R. § 404.1527 and 461.9627."[68]

In the 10th Circuit, "[t]he ALJ must give 'controlling weight' to the treating physician's

opinion, provided that opinion 'is well-supported…and is not inconsistent with other

substantial evidence.'"[69]  Further,

>  [e]ven if a treating physician's opinion is not entitled to controlling
> weight, treating source medical opinions are still entitled to deference and
> must be weighed using all of the factors provided in [20 C.F.R. §
> 404.1527]. Those factors are: (1) the length of treatment relationship and
> the frequency of examination; (2) the nature and extent of the treatment
> relationship, including the treatment provided and the kind of examination
> or testing performed; (3) the degree to which the physician's opinion is
> supported by relevant evidence; (4) consistency between the opinion and
> the record as a whole; (5) whether or not the physician is a specialist in the
> area upon which an opinion is rendered; and (6) other factors brought to
> the ALJ's attention which tend to support or contradict the opinion.

---

[64] Tr. at 26.
[65] Tr. at 27.
[66] Tr. at 29.
[67] 20 C.F.R. §416.927(a)(2).
[68] Andersen v. Astrue, 319 Fed. App'x 712, 718 (10th Cir. 2009)(quoting Social Security Ruling 96-2p, 1996 WL 374188, at *4).
[69] White v. Barnhart, 287 F.3d 903, 907 (10th Cir. 2001)(citing 20 C.F.R. § 404.1527(d)(2)).

> Under the regulations, the agency rulings, and [Tenth Circuit] case law, *an ALJ must give good reasons…for the weight assigned to a treating physician's opinion that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight. If the ALJ rejects the opinion completely, he [or she] must give specific, legitimate reasons for doing so.*[70]

In addition, as with other evidentiary matters, when an ALJ is considering medical opinion evidence, it is the ALJ's role to weigh and resolve evidentiary conflicts and inconsistencies.[71] However, "[i]n choosing to reject [a] treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion."[72]

Here, Dr. Ericksen performed a psychological examination of Plaintiff, including performing a number of tests. Dr. Ericksen found Plaintiff's test results suggested she would be best suited to jobs involving simple, repetitive tasks, rather than jobs that require acute judgment and insight. Dr. Ericksen further opined that in the Plaintiff's current condition she would be a poor prospect for job training and recommended a thorough psychiatric medication evaluation and have access to psychotherapy. He diagnosed the Plaintiff with Major Depressive and Personality Disorders and assessed a GAF score of 50.

---

[70] Langley v. Barnhart, 373 F.3d 1116, 1119 (10th Cir. 2004)(internal quotations and citations omitted); see also 20 C.F.R. § 404.1527(c); Social Security Ruling ("SSR") 96-2p (emphasis added).

[71] See e.g., Ruthledge v. Apfel, 230 F.3d 1172, 1174 (10th Cir. 2000); Eggleston v. Bowen, 851 F.2d 1244, 1247 (10th Cir. 1988).

[72] Langley at 1121 (quoting McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir. 2002)("holding [The 10th Circuit] held years ago that an ALJ's assertion that a family doctor naturally advocates his patient's care is not a good reason to reject his opinion as a treating physician.")

There can be no doubt that Dr. Ericksen is an acceptable medical source.  He is a psychologist who examined the Plaintiff and performed various tests.  In addition, Dr. Erickson provided a medical opinion.  Dr. Ericksen discussed the Plaintiff's symptoms, diagnosis, prognosis, recommended treatment regime and issues Plaintiff may encounter through job training.  In addition, the GAF score given by Dr. Ericksen was in line with Ms. Wolfinger's assessments.  Thus, although Dr. Ericksen's opinion was rendered prior to the alleged onset date, the ALJ should have provided the weight, if any, to be given to Dr. Ericksen's opinion or at least discussed why this opinion was rejected or accepted.  Instead, the ALJ's opinion did not provide any discussion as to Dr. Ericksen after a summary of his findings.  In addition, without re-weighing the evidence, this is not a harmless error.  As the Plaintiff points out, the ALJ's failure to credit Dr. Ericksen's medical opinion could have caused harm to the Plaintiff, because if the opinion were properly considered could have altered the weight given to other medical opinions or possibly supported a finding of disability.[73]

Next, although the ALJ correctly stated that Nurse Sittler and Ms. Wolfinger were not acceptable medical sources, the ALJ was still required to consider their opinions as an "other source" and "weight them in the same manner that he [or she] weights the opinions of acceptable medical sources."[74]  The regulations contemplate the use of information from "other sources," both medical and non-medical.[75]  "Other medical sources" include, but are not limited to, "nurse-practitioners, physicians' assistants,

---

[73] Docket no. 18 at 6.
[74] Sanchez v. Astrue, No. 2:09-cv-1116-DN, 2011 WL 4591900 at *5 (D. Utah September 30, 2011)(citing Frantz v. Astrue, 509 F.3d 1299, 1301 (10th Cir. 2007).
[75] Frantz, at 1301; see 20 C.F.R. §§ 414.1513(a), 404.1527(a)(2); 404.1527(d).

naturopaths, chiropractors, audiologists, and therapists."[76]  These sources may provide

evidence concerning the severity of the claimant's impairments and how it affects her

ability to work.[77]  Thus, the ALJ must "explain the weight given to these opinions or

otherwise ensure that the discussion of the evidence allows a claimant or subsequent

reviewer 'to follow adjudicator's reasoning, when such opinions may have an effect on

the outcome of the case.'"[78]

      Here, the ALJ's treatment of Jessica Wolfinger's opinions is in line with these

principles.  The ALJ gave full consideration of Ms. Wolfinger's findings and opinion as

if she functioned as a treating source but ultimately did not place weight on Ms.

Wolfinger's opinion with regard to disabling impairment because it is the ALJ

responsibility to determine issues of disability.   Likewise, although the ALJ did not

specify an exact weight assigned to Nurse Sittler's opinion, it is clear that he adopted

some of her assessments but ultimately did not give her opinion much weight because the

opinion appeared to not be supported by the objective medical evidence and appeared to

be based instead on the subjective complaints of the Plaintiff.  The Court finds that with

regard to the opinions of Nurse Sittler and Ms. Wolfinger, the ALJ's analysis sufficiently

allowed the Court to follow the ALJ's reasoning by providing legitimate reasons for not

placing weight or otherwise accepting these opinions.  Therefore, the ALJ's opinion with

respect to these two providers is in line with applicable standards.[79]

      Finally, the Court finds that the ALJ erred by not setting forth the proper "weight"

standards for the opinions of Dr. Johnson, Dr. Ririe or the state agency physicians.  Here,

---

[76] Frantz, at 1301; see 20 C.F.R. §404.1513(d).
[77] Id.
[78] Sanchez, at *5 (internal quotations and citations omitted).
[79] See id.

the ALJ assigned "more weight" to Dr. Ririe's opinion, "weight" to Dr. Johnsen's opinion.  The ALJ stated that the state agency physician opinions were not entitled to controlling weight but did not assign any lesser weight, nor provide any reasoning in order for the Court to discern whether these opinions were accepted or rejected.

Based on the foregoing, with the exception of the opinions of Ms. Sittler and Ms. Wolfinger, it is not sufficiently clear to the Court as to the specific weight assigned to the medical opinions or the specific reasoning applied to each.[80]  First, the ALJ did not assign "controlling weight" to any treating physician.  Therefore, because Dr. Ririe's opinion was given "more weight" the Court would have to assume that this is the opinion was weighed most heavily than Dr. Johnsen's opinion, because of the use of the word "more."  In addition, this analysis may have changed had the ALJ given Dr. Ericksen's opinion or more discussion was provided as to the State Agency physicians.  Therefore, the Court finds that the ALJ's lack of specificity as to the weight assigned to each of the medical opinions wants further review and remand.

## **CONCLUSION**

For the foregoing reasons, the Court finds that the Plaintiff's arguments regarding the ALJ's rejection of the Plaintiff's treating and examining physicians has merit and warrants remand for further proceedings as set forth herein.  Therefore, IT IS HEREBY ORDERED that the Commissioner's decision is REVERSED AND REMANDED.

**IT IS SO ORDERED.**

---

[80] See Langley at 1119.; Sanchez, at *5.

DATED this 21 March 2013.

Brooke C. Wells
United States Magistrate Judge